[Cite as *State v. Rudy*, 2023-Ohio-2023.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO. 1-22-56

     v.

RANDALL L. RUDY,                O P I N I O N

     DEFENDANT-APPELLANT.

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO. 1-22-57

     v.

RANDALL L. RUDY,                O P I N I O N

     DEFENDANT-APPELLANT.

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO. 1-22-58

     v.

RANDALL L. RUDY,                O P I N I O N

     DEFENDANT-APPELLANT.

**Appeals from Allen County Common Pleas Court**
**Trial Court Nos. CR2019 0300, CR2021 0009 and CR2019 0184**

**Judgments Affirmed**

**Date of Decision:  June 20, 2023**

**APPEARANCES:**

> *Randall L. Rudy,* **Appellant**

> *John R. Willamowski, Jr.*  **for Appellee**

**MILLER, P.J.**

**{¶1}** Defendant-appellant, Randall L. Rudy ("Rudy"), appeals the August 25, 2022 judgments of the Allen County Court of Common Pleas denying his motion for a new trial.  For the reasons that follow, we affirm.

*Facts & Procedural History*

**{¶2}** On June 13, 2019, the Allen County Grand Jury indicted Rudy on two counts in case number CR2019 0184: Count One of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(d), a second-degree felony, and Count Two of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c), a second-degree felony.  Count Two included a specification for forfeiture of money

in a drug case pursuant to R.C. 2941.1417(A).  On June 20, 2019, Rudy appeared for arraignment and entered not guilty pleas to the charges and specification.

{¶3} On July 11, 2019, the Allen County Grand Jury indicted Rudy on two counts in case number CR2019 0300: Count One of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(a), a fourth-degree felony, and Count Two of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(c), a third-degree felony.  On July 18, 2019, Rudy appeared for arraignment and entered not guilty pleas to the counts in the indictment.

{¶4} On January 14, 2021, the Allen County Grand Jury indicted Rudy in  a third matter assigned case number CR2021 0009 charging a single count of tampering with evidence in violation of R.C. 2921.12(A)(2), (B), a third-degree felony.  He filed a written plea of not guilty on January 19, 2021.

{¶5} Rudy appeared for a change-of-plea hearing on the pending cases on March 29, 2021.  Under a negotiated-plea agreement, the State requested the trial court dismiss Count One in case number CR2019 0184.  In exchange, Rudy withdrew his not guilty pleas and entered guilty pleas to the remaining four charges. The parties also agreed to jointly recommend a prison sentence.  The trial court accepted Rudy's guilty pleas, found him guilty of the offenses, and ordered a pre-sentence investigation.  The trial court filed its judgment entries of conviction on March 30, 2021.

{¶6} The trial court held a sentencing hearing on the pending cases on May 26, 2021 at which time it imposed the jointly-recommended sentence. With respect to case number CR2019 0184, the trial court sentenced Rudy to an indefinite term of five to seven and one-half years in prison on Count Two. With respect to case number CR2019 0300, the trial court sentenced Rudy to 12 months in prison on Count One and 24 months in prison on Count Two. With respect to case number CR2021 0009, the trial court sentenced Rudy to 12 months in prison. The trial court ordered all of the sentences to be served consecutively to each other for an aggregate term of 9 to 11.5 years in prison. The following day, the trial court filed its judgment entries of sentence.

{¶7} On July 21, 2022, Rudy filed a document styled "Motion for New Trial[,] or in the Alternative[,] A Renewed Negotiated Plea." In the motion, Rudy argues his pleas were not knowing, intelligent, and voluntary because the trial court did not correctly apprise him of the timeframe for applying for judicial release. He also alleged his trial counsel was ineffective for not realizing the trial court's error. After receiving a response from the State, the trial court proceeded to overrule Rudy's motion. From this decision Rudy filed his notices of appeal raising one assignment of error for our review.

### Assignment of Error

**Affirmative Misstatements of Trial Court Regarding Appellant's Sentence and Judicial Release Consideration Were Prejudicial to Appellant and Contrary to Law.**

-4-

{¶8} In his assignment of error, Rudy argues the trial court misinformed him regarding his eligibility to file for judicial release. At the change-of-plea hearing, the trial court stated the following regarding judicial release:

> [A]fter you're done with your mandatory time, after you wait a certain period of time, you can file for a judicial release to get out of prison early. I would have that authority. * * * But, anyways, [the judge at the time judicial release is filed] would have to decide whether they let you out early or not. That's a judicial release. You cannot file – well, you can file all you want, but you're not eligible for judicial release while you're serving mandatory time. Once you're done with mandatory time then the non-mandatory time would add up to one, two, three, four years. So, you would have to wait six months into that before you can file for judicial release. Assuming, again, that you're going to get out after you do your five year minimum – you do the five year minimum on the mandatory and you do six more months and then you can file for a judicial release. Now, it's not a guarantee that you get a judicial release. * * * But, you're eligible.

(Mar. 29, 2021 Tr. at 13-14).[1]

{¶9} Rudy contends that, contrary to the trial court's explanation, prison officials interpret R.C. 2929.14(C)(10) and the Ohio Administrative Code to require him to serve his non-mandatory determinate sentences prior to serving his mandatory indeterminate sentence. Rudy complains this makes him ineligible to file for judicial release until after he serves nine years of his sentence. Because of this alleged error by the trial court, Rudy filed his motion titled "Motion for New Trial[,] or in the Alternative[,] A Renewed Negotiated Plea."

---

[1] At the sentencing hearing, the trial court reiterated the same timing of Rudy's eligibility to file for judicial release. (May 26, 2021 Tr. at 16).

-5-

**{¶10}** As an initial matter, we note that although Rudy styled the filing as a motion for a new trial or motion for renewed plea negotiations, the crux of Rudy's argument is that his guilty pleas were not knowing because the trial court misinformed him of the timeframe of his eligibility to file for judicial release. Accordingly, the trial court recast his filing as a postsentence motion to withdraw guilty pleas. *See State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, ¶ 12 ("Courts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged."). In his appellate brief, Rudy again argues the trial court's misrepresentations regarding the timeframe of his eligibility for judicial release resulted in his pleas not being knowingly entered. Accordingly, our analysis will likewise focus on whether the trial court's Crim.R. 11 colloquy rendered his pleas knowing, intelligent, and voluntary.

*Discussion*

**{¶11}** Appellate review of the trial court's denial of a motion to withdraw a guilty plea is limited to whether the trial court abused its discretion. *State v. Cartlidge*, 3d Dist. Seneca No. 13-21-06, 2021-Ohio-3787, ¶ 8. An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶12}** A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which provides:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

A defendant seeking to withdraw a guilty or no-contest plea after sentencing bears the burden of demonstrating a "manifest injustice." *State v. James*, 3d Dist. Hancock No. 5-19-30, 2020-Ohio-720, ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "[A] postsentence withdrawal motion is allowable only in extraordinary cases." *Smith* at 264. The Supreme Court of Ohio has defined the manifest injustice standard as a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998). "'A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.'" *State v. Kimpel*, 3d Dist. Shelby No. 17-17-12, 2018-Ohio-2246, ¶ 16, quoting *Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 1473 (1970).

{¶13} Crim.R. 11, which outlines the procedures the trial court must follow when accepting pleas, "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). "If the plea was not made knowingly, intelligently, and

voluntarily, enforcement of that plea is unconstitutional." *Id.* at ¶ 10. Crim.R. 11(C)(2), which applies specifically to a trial court's acceptance of pleas in felony cases, provides as follows:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally * * * and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶14}** "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14-15; Crim.R. 52. Generally, to demonstrate prejudice, a defendant would have to establish that "his plea would not have otherwise been made." *Dangler* at ¶ 24.

**{¶15}** There are limited exceptions to the prejudice requirement in the criminal-plea context. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 31 and *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, syllabus. The "constitutional" rights are set forth in Crim.R. 11(C)(2)(c) above. *See Dangler* at ¶ 14. When a trial court fails to fully cover "nonconstitutional" rights in Crim.R. 11, "a defendant must affirmatively show prejudice to invalidate a plea." *Dangler* at ¶ 14, citing *Veney* at ¶ 17.

**{¶16}** The Supreme Court of Ohio recognized one other exception to the prejudice requirement: "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22. However, "[a]side from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

**{¶17}** Rudy argues he suffered a manifest injustice because the trial court failed to properly advise him of the correct maximum penalties at his change-of-plea hearing. Specifically, Rudy argues the trial court misinformed him at both his

plea and sentencing hearings of the maximum time he would have to serve before becoming eligible to file for judicial release.

**{¶18}** The "trial court is generally not required to inform a defendant about judicial release during the plea colloquy." *State v. Foster*, 1st Dist. Hamilton No. C-170245, 2018-Ohio-4006, ¶ 24. However, "[i]t is well settled * * * that where a trial court gives a defendant '*misinformation* regarding judicial release,' it may invalidate the plea." (Emphasis sic.) *State v. Robinson*, 8th Dist. Cuyahoga Nos. 106676 and 106980, 2018-Ohio-4863, ¶ 24, quoting *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 15. *See also State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, ¶ 26-28; *State v. Hendrix*, 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978, ¶ 32-33; *State v. Sherman*, 5th Dist. Richland No. 2009-CA-132, 2010-Ohio-3959, ¶ 41. The rationale behind the principle is "[w]hen a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently." *State v. Mitchell*, 11th Dist. Trumbull No. 2004-T-0139, 2006-Ohio-618, ¶ 15, citing *State v. Engle*, 74 Ohio St.3d 525, 528 (1996). Yet, "misinformation regarding judicial release does not always invalidate the plea." *Robinson* at ¶ 25. *See State v. Cvijetinovic*, 8th Dist. Cuyahoga No. 81534, 2003-Ohio-563.

**{¶19}** After reviewing the record and Rudy's arguments on appeal, we find Rudy has failed to demonstrate he was prejudiced by the trial court's statements

regarding the timeframe of his eligibility for judicial release. Even assuming the trial court was incorrect in its explanation regarding judicial release, we do not find that Rudy was induced to enter his plea because of the statements or was prejudiced by them. Judicial release was not one of the terms of the parties' agreement. Notably, the parties' change-of-plea documents are silent with respect to any agreement relating to judicial release. Likewise, the plea negotiations stated on the record pursuant to Crim.R. 11(F) do not indicate any assurances regarding Rudy's applying for judicial release. For instance, the State did not make assurances to not oppose a judicial release motion. The record does not indicate that Rudy's eligibility for judicial release was a consideration of Rudy's plea such that a misstatement regarding the timeframe of his eligibility induced him to change his plea. Rather, the record indicates Rudy was induced to change his plea based on the terms of the plea agreement, including the parties' agreed sentence recommendation, which was less than the maximum terms available, and the State's agreement to recommend dismissal of Count One in case number CR2019 0184. Moreover, the trial court granted the State's motion to dismiss the relevant count and imposed the parties' agreed sentence. Accordingly, Rudy actually received the benefit of the bargain.

{¶20} Importantly, the trial court was careful not to make any guarantees regarding a judicial release motion. While Rudy may have been hopeful that he could be released after serving the mandatory time and six months of his non-

mandatory sentence, this was not a guarantee such that Rudy was prejudiced by the trial court's explanation. Because Rudy has not demonstrated that he was prejudiced by the trial court's explanation of the timing for judicial release eligibility, we do not find that he suffered a manifest injustice.

**{¶21}** Rudy's assignment of error is overruled.

**{¶22}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the Allen County Court of Common Pleas.

*Judgments Affirmed*

**ZIMMERMAN and EPLEY, J.J., concur.**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

**/jlr**